ORIGINAL

Stephen M. Feldman, Esq./SBN 65773
LAW OFFICES OF STEPHEN M. FELDMAN
15915 Ventura Boulevard
Suite 201
Encino, California 91436
Tel No. (818) 907-0334
Fax No. (818)907-9056

FILED
[illegible] 2 7 2004

Attorney for Plaintiffs Nesslin Cruz
and Ohassy Cruz

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

NESSLIN CRUZ, an individual, and OHASSY CRUZ, an individual,

Plaintiffs,

vs.

THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C.,

Defendant.

_______________________________/

**CASE NO.** 04 - 1222C

**COMPLAINT FOR BREACH OF WRITTEN CONTRACT, AND DECLARATORY RELIEF**

COMES NOW Plaintiffs NESSLIN CRUZ and OHASSY CRUZ and complains against THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C., as follows:

1. The United States Court of Federal Claims has jurisdiction in regard to the pending matter pursuant to 28 USCA Sec. 1491(a)(1). The pending matter is for money damages based on breach of contract with the United States Government, The Secretary of Housing and Urban Development.

2. Defendant THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT is, and at all times herein mentioned was, a division of the United States Government ("HUD").

3. HUD is the owner of real property located at 5936 Barton Avenue, Los Angeles, California and described as attached hereto in **Exhibit "A"**.

4. On or about May 20, 2003, Plaintiffs and HUD entered into a written Purchase and Sale Agreement whereby HUD would sell and Plaintiffs would purchase certain real property located at 5936 Barton Avenue, Los Angeles, CA 90038 ("Barton property") for the price of $260,000. A copy of the sales contract evidencing such Purchase and Sale Agreement is attached hereto as **Exhibit "B"**.

5. Escrow was then opened with Escrow Max. A copy of the Sales Escrow Instructions is attached hereto as **Exhibit "C"**.

6. In connection with the purchase of the Barton property, Plaintiffs deposited into escrow with Escrow Max, by cashier's check the sum of $1,000 by money order the sum of $1,000 for a total deposit of $2,000. The balance of the purchase price of $258,000 was to be funded through escrow on or before June 23, 2003.

7. According to the terms of purchase, Plaintiffs could obtain an extension of time on the escrow by submission of a written request for an extension and the payment of a certain amount of money as evidenced by a schedule.

8. Plaintiffs requested an extension of time from June 23, 2003 to July 23, 2003 and paid the requisite fees of $750. Defendant accepted the fees by cashing Plaintiffs' check and extending the escrow term from June 23, 2003 through July 23, 2003.

9. Plaintiffs requested a second extension of time from July 23, 2003 through August 22, 2003 and paid the requisite fees for such extension. Plaintiffs' checks were cashed and Plaintiffs received no information that Plaintiffs' second extension was not granted. Plaintiffs believed that Defendant had granted Plaintiffs a second extension of time and that the escrow would remain open through August 22, 2003.

10. Notwithstanding the granting of the first and the second extension, Defendant breached the contract with Plaintiffs by notifying Plaintiffs on August 8, 2003 that Defendant had sold the Barton property to another purchaser for $350,000.

11. Defendant's actions in selling the Barton property to another buyer after granting to Plaintiffs an extension of time, while Plaintiffs were obtaining and finalizing their financing for the

purchase of the property, constituted a breach of contract.

12. As a direct and proximate result of the breach of contract by Defendant, Plaintiffs have sustained damages in an amount of at least $90,000 representing the difference between the contract for the purchase and sale of the Barton property with Plaintiffs and the new Purchase and Sale Agreement entered into by and between Defendant and a third party on or about August 8, 2003 in the sum of $350,000.

WHEREFORE, Plaintiffs pray judgment against Defendant as follows:

1. For damages in the sum of $90,000;
2. For interest on all sums due at the maximum legal interest from the date due;
3. For costs of suit herein incurred;
4. For such other and further relief as the Court may deem just and proper.

DATED: July 22, 2004

LAW OFFICES OF STEPHEN M. FELDMAN

By: ______________________

STEPHEN M. FELDMAN,
Attorney for Plaintiffs
Nesslin Cruz and Ohassy Cruz

Address: 15915 Ventura Blvd., Suite 201
Encino, CA 91436
Phone: (818) 907-0334
Facsimile: (818) 907-9056

C:\wp\Complaint\12017.dn.wpd

LEAD SHEET

1

01-1902702

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA

3:41 PM OCT 05 2001

SPACE ABOVE THIS LINE FOR RECORDERS USE

## TITLE(S)

DEED

FEE

FEE $7 SS

D.T.T.

CODE 20

CODE 19

CODE 9

Assessor's Identification Number (AIN)
To Be Completed By Examiner OR Title Company In Black Ink

5534 027 009

Number of Parcels Shown

001

THIS FORM IS NOT TO BE DUPLICATED

*Description: Los Angeles,CA Document-Year.DocID 2001.1902702 Page: 1 of 2*
*Order: LH-10-02-2003 09-29-32 AM Comment:*

Exhibit "A"

RECORDING REQUESTED BY

FIDELITY NATIONAL

WHEN RECORDED MAIL TO

2

01-1902702

DEPARTMENT OF HOUSING & URBAN DEVELOPMENT
ATTN: SHANNON O'TOOLE
2500 MICHELSON SUITE 100
IRVINE, CA, 92612

TRUSTEE'S SALE NO: 05-TI-19051
LOAN NO: 1232031 FHA
FHA NO: 197-0871608-702

1705870

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

**TEMPLE-INLAND MORTGAGE CORPORATION A Nevada Corporation, a Corporation having its principal place of business in Texas, for a valuable consideration, receipt of which is hereby acknowledged, does hereby grant to the SECRETARY OF HOUSING AND URBAN DEVELOPMENT, and to his/her successors in such office as such, hereinafter called grantee, all that property situated in the County of LOS ANGELES, State of California, and described as follows:

LOT 15 IN BLOCK 7 OF EL CENTRO TRACT COLEGROVE, IN THE CITY OF LOS ANGELES, AS PER MAP RECORDED IN BOOK 2, PAGE 84 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

TAX PARCEL NO. 5534-027-009

IN WITNESS WHEREOF, said corporation has caused its corporate name and seal to be affixed hereto and this instrument to be executed by its officers thereunto duly authorized.

DATED 4/18/01

**GUARANTY RESIDENTIAL LENDING, INC. FKA
TEMPLE-INLAND MORTGAGE CORPORATION

By: [signature]
Dwayne Orr, Assistant Vice President

STATE OF TEXAS }
} SS.
COUNTY OF TRAVIS }

On 4/18/01, before me, the undersigned, a Notary Public in and for said state, duly commissioned and sworn, personally appeared Dwayne Orr personally known to me (or proved to me on the basis of satisfactory evidence)to be the person who executed the within instrument as Asst. Vice President on behalf of the corporation therein named and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

[signature]
My Commission expires.

~~MAIL TAX STATEMENTS AS DIRECTED ABOVE.~~

PAULA C. CASTANON
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-11-2004

Description: Los Angeles,CA Document-Year.DocID 2001.1902702 Page: 2 of 2
Order: LH-10-02-2003 09-29-32 AM Comment:


ASSESSOR'S MAP
GOWER ST.
BARTON AVE.
WILLOUGHBY AVE.
EL CENTRO AVE.
NORTH
EAST
BLK. 7
EL CENTRO TRACT
M.B. 2-84
CODE 67
FOR PREV. ASSM'T. SEE: 1118-27
5534 27
SCALE 1"=80'
1978

**Sales Contract**
Property Disposition Program

U.S. Department of Housing and Urban Development
Office of Housing
Federal Housing Commissioner

HUD Case No. 197087160

1. I (We), Ohassy Cruz and Nesslin Cruz (Purchaser(s)) agree to purchase on the terms set forth herein, the following property, as more particularly described in the deed conveying the property to the Secretary of Housing and Urban Development:
5936 Barton Ave Los Angeles Ca 90038
(street number, street name, unit number, if applicable, city, county, State)

2. The Secretary of Housing and Urban Development (Seller) agrees to sell the property at the price and terms set forth herein, and to prepare a deed containing a covenant which warrants against the acts of the Seller and all claiming by, through or under him. Title will be taken in the following name(s) and style: Ohassy Cruz and Nesslin Cruz

3. The agreed purchase price of the property is .......... 3. $ 260,000.00
Purchaser has paid $ 2,000.00 as earnest money to be applied on the purchase price, and agrees to pay the balance of the purchase price, plus or minus prorations, at the time of closing, in cash to Seller. The earnest money deposit shall be held by Seller Choice

GOLDEN FEATHER REALTY
MAY 05 2003
VAN NUYS

4. ☐ Purchaser is applying for FHA insured financing [ ☐ 203(b), ☐ 203(b) repair escrow, ☐ 203(k)] with a cash down payment of $ T.B.D due at closing and the balance secured by a mortgage in the amount of $ T.B.D for 360 months (does not include FHA Mortgage Insurance Premium, prepaid expenses or closing costs Seller has agreed to fund into mortgage.).
☐ Said mortgage involves a repair escrow amounting to $ -0-
☑ Purchaser is paying cash or applying for conventional or other financing not involving FHA.

5. Seller will pay reasonable and customary costs, but not more than actual costs, nor more than paid by a typical Seller in the area, of obtaining financing and/or closing (excluding broker's commission) in an amount not to exceed .......... 5. $ 6,000.00

6a. Upon sales closing, Seller agrees to pay to the broker identified below a commission (including selling bonus, if offered by seller) of .......... 6a. $ 13,000.00

6b. If broker identified below is not the broad listing broker, broad listing broker will receive a commission of: .... 6b. $ 1,950.00

7. The net amount due Seller is (Purchase price [Item 3] less Items 5 and 6) .......... 7. $ 239,050.00

8. Purchaser is: ☑ owner-occupant (will occupy this property as primary residence) ☐ investor ☐ nonprofit organization ☐ public housing agency ☐ other government agency. Discount at closing: -0- %
*Discount will reduced by amounts, if any, listed on Line Items 5 and 6.*

9. Time is of the essence as to closing. The sale shall close not later than 45 days from Seller's acceptance of contract. Closing shall be held at the office of Seller's designated closing agent or Seller Choice / Escrow mix

10. If Seller does not accept this offer, Seller ☑ may ☐ may not hold such offer as a back-up to accepted offer.

11. Lead based paint addendum ☑ is ☐ is not attached; Other addendum ☑ is ☐ is not attached hereto and made part of this contract.

12. **Should Purchaser refuse or otherwise fail to perform in accordance with this contract, including the time limitation, Seller may, at Seller's sole option, retain all or a portion of the deposit as liquidated damages. The Seller reserves the right to apply the earnest money, or any portion thereof, to any sums which may be owed by the Purchaser to the Seller for rent.** Purchaser(s) Initials: [initials] Seller's Initials: [initials]

13. This contract is subject to the Conditions of Sale on the reverse hereof, which are incorporated herein and made part of this contract.

**Certification of Purchaser: The undersigned certifies that in affixing his/her/its signature to this contract he/she/it understands: (1) all the contents thereof (including the Conditions of Sale) and is in agreement therewith without protest; (2) he/she/it is responsible for satisfying itself as to the full condition of the property; and (3) that Seller will not perform repairs after acceptance of this contract.**

Purchaser(s): (type or print names & sign)
Ohassy Cruz and Nesslin Cruz [signatures]

Purchaser(s) Address: 23948 Jensen St West Hills Ca 91304

Purchaser(s) Social Security Number (SSN) or Employer Identification Number (EIN) (include hyphens): 572633993 566377519

Phone No: 818 615 0816

Date Purchaser(s) Signed Contract: 05/05/03

Seller: Secretary of Housing and Urban Development By: (type name & title, & sign)
X [signature]

Date Contract Accepted by HUD: 5/9/03

**Certification of Broker:** The undersigned certifies that: (1) neither he/she nor anyone authorized to act for him/her has declined to sell the property described herein to or to make it available for inspection or consideration by a prospective purchaser because of his/her race, color, religion, sex, familial status, national origin, or disability; (2) he/she has both provided and explained to the purchaser the notice regarding use of Seller's closing agent; (3) he/she has explained fully to the purchaser the entire terms of the contract, including Condition B on the reverse hereof; and (4) he/she is in compliance with Seller's earnest money policy as set forth on HUD forms SAMS-1111, Payee Name and Address, and SAMS-1111-A, Selling Broker Certification, which he/she has executed and filed with Seller.

Broker's Business Name & Address: (for IRS reporting) (include Zip Code)
ERA First Valley
7226 Sepulveda Blvd #100
Van Nuys Ca 91405

Broker's EIN or SSN: (include hyphens) 954556846

SAMS NAID: RIMXFR6846

Signature of Broker: X [signature]

Broker's Phone No: 818 9898700 (818) 989-8711 FAX

Type or print the name and phone number of sales person: FEDERICO TRIEBEL

This section for HUD use only. Broker notified of:
☐ Acceptance ☐ Back-Up No. ______
☐ Rejection ☐ Return Earnest Money Deposit

Authorizing Signature & Date:
X

Previous editions are obsolete

ref. Handbook 4310.5 form HUD-9548 (1/99)

Exhibit "B"

ESCROW MAX
18173 Pioneer Blvd, Suite # A, Artesia CA 90701
(562) 809-1997 • FAX (562) 809-5699
www.escrowmax.com

# SALE ESCROW INSTRUCTIONS

TO: **Escrow Max Corporation, HUD Division**
Escrow Officer: **Sara Beresford**

Escrow Number: **209198**
Date: **May 20, 2003**
HUD CASE #**197-087160**

**Escrow Max Corporation, A CALIFORNIA CORPORATION IS LICENSED AS AN ESCROW AGENT BY THE DEPARTMENT OF CORPORATIONS OF THE STATE OF CALIFORNIA, UNDER LICENSE NUMBER 9631783.**

**Ohassy Cruz and Nesslin Cruz**, (hereinafter known as Buyer) agree to purchase from **The Secretary of Housing & Urban Development** , (hereinafter known as Seller) the real property setforth herein per the terms, conditions, consideration and instructions hereinafter stated.

**Terms of Transaction**

| | | |
|---|---|---|
| Buyer has deposited to escrow by Cashiers Check, the sum of | $ | 1,000.00 |
| Buyer has deposited to escrow by Money Orders, the sum of | $ | 1,000.00 |
| Buyer to obtain a New 1st Trust Deed loan in the amount of | $ | 258,000.00 |
| **To Complete the Total Consideration of** | $ | 260,000.00 |

Buyer(s) will hand you, or cause to be handed you, the sum of **$260,000.00** as per the terms of transaction listed above. Buyer will further hand you any and all sufficient funds for closing costs, expenses and prorations between Buyer and Seller, prior to the close of this escrow.

Buyer shall deliver to you any instruments and/or funds required from Buyer to enable you to comply with these instructions, all of which you are authorized to use and/or deliver on or before **June 23, 2003**, and when you are in a position to obtain a standard Policy of Title insurance through **Nations Title Company**, provided that said policy has a liability of at least the amount of the above total consideration, covering the following property in the City of **Los Angeles**, County of **Los Angeles**, State of **California**, described as follows:

**See Exhibit "A" attached hereto and made a part hereof.**

Property Address: **5936 Bartoon Avenue, Los Angeles, CA 90038**

SHOWING TITLE VESTED IN: **Ohassy Cruz, a single man and Nesslin Cruz, a single man as joint tenants**

SUBJECT TO:

1. General and Special County and City (if any) Taxes, including any special district levies, payments which are included therein and collected therewith, for current fiscal year, not delinquent, including taxes for ensuing year, if any, a lien not yet due or payable.
2. Covenants, conditions, restrictions, reservations, rights, rights of way, easements and exceptions of minerals, oil, gas, water, carbons and hydrocarbons on or under said land, now of record, and in deed to file, if any, affecting the use and occupancy of said property.
3. Assessments and bonds of record, if any, not delinquent.
4. A New **CONVENTIONAL** First Trust Deed to record, executed by Vestee herein, securing a Note for **$258,000.00** in favor of ****Selected Lender to Follow****, or order, bearing interest at a rate determined by the Lender, payable as required by the Lender. Buyers' execution of the loan documents shall be deemed approval of all terms and conditions contained therein. Escrow Holder is instructed to comply with all of the lender's requirements in connection with said new loan.

**INSTRUCTIONS TO ESCROW:**

**PRORATIONS:** Escrow Holder is hereby authorized and instructed to prorate the following items as of the date of close of escrow, based on a 365 day year:
1. Real Property Taxes based on the latest available tax bills.
2. Homeowner's Association Dues, if applicable, based on the statement received from the Homeowner's Association or its representative.

**FINANCING:** As per paragraph 4 of the original contract, the Buyer is paying **"ALL CASH" or applying for Conventional or other financing NOT INVOLVING FHA.** Should Buyer opt to pay **"ALL CASH"** for the property, Escrow Holder is authorized to close this escrow without regard or concern about fire insurance coverage for the subject property (unless property is a Condominium/Townhouse, in which case, Escrow Holder's only concern is to transfer the Sellers interest in the master policy to Buyer, at the close of escrow). Buyer is to obtain their own insurance coverage outside of escrow and releases

Buyer Initials: ___ ___



Exhibit "C"

**Escrow Max Corporation**

Date: **May 20, 2003**
Escrow No.: **209198**

Escrow Holder from any responsibility in connection therewith.

In the event Buyer(s) exercise their option of obtaining financing, it will be a **NEW CONVENTIONAL** loan and Escrow Holders receipt of the new lenders loan instructions shall be deemed satisfaction of this contingency, as well as Escrow Holders, authorization, by Buyers, to comply with the new lenders conditions and requirements in their entirety.

**INSURANCE:** If Buyer(s) are obtaining a new loan in this transaction, the Buyer shall deposit into Escrow, for lender's approval, a hazard insurance policy showing a first mortgagee clause in favor of any new lender of Buyer's choice. A paid receipt for premium indicated thereon shall be deposited into Escrow, or in lieu thereof, you are instructed pay the premium from Buyer's funds at close of escrow, or as otherwise instructed by parties hereto.

**OR,** if the property being conveyed herein is a Condominium, the following paragraph amends and supercedes the previous paragraph as follows:

**CONDOMINIUM CERTIFICATE OF INSURANCE:** Escrow Agent is instructed to order for benefit of Buyer and/or lender, a condominium certificate of insurance from the insurer for master policy insuring the project. Premium(s) for same are paid from assessments/dues. Should the provider of said certificate require a fee for its issuance, Escrow Holder is authorized to charge the Buyer. Personal property and liability coverage are not included in master policy and Buyer should make arrangements for adequate coverage through an insurer outside of escrow.

**HOMEOWNER'S ASSOCIATION:** In the event the property described herein is a Condominium/PUD, upon receipt of notification of same Escrow Holder shall obtain an current statement of account from the HOA Management Company, reflecting the monthly association dues and any delinquent fees which may be due. Seller shall pay for the cost of any transfer fee, and approved delinquent dues, where applicable. Buyer shall be responsible for the following fees which may include but are not limited to any demand/statement fees, document fees, key fees, and parking permit/decal fees. Escrow Holder shall charge the Buyer's account herein for said fees only if listed on the demand submitted to escrow by the HOA Management Company. In the event a "Special Assessment" exists on subject property, the Buyer shall assume said assessment, as part of the monthly association dues. Escrow Holder shall further obtain copies of the homeowner's association CC&R's, By-Laws, and Budget and provide to the Buyers, at the close of escrow, for their records. Should the Management Company be unable to provide such documentation up front, Escrow Holder shall instruct Association and/or Management Company to forward the package to the Buyers, at their address. Further, in the event Buyer's new lender requires an additional set of said documentation in connection with the processing of Buyer's new loan, Escrow Holder is authorized and instructed to procure same and debit Buyers account for cost at close of escrow.

**LINE 5 CLOSING COSTS PAID BY SELLER/HUD:** Charge account of Seller/HUD herein an amount **NOT TO EXCEED $6,000.00** (AS REFERRED ON LINE 5 of sales contract) for SPECIFIC Buyer's closing costs, WHICH ARE LIMITED TO THE FEES REFERRED BELOW, NO EXCEPTIONS:

(1) 1% Loan Origination Fee (1ST TRUST DEED ONLY!) OR 1.5% on 203(k) loans
(2) Loan Discount Point(s) up to 3% of the loan amount with certification from lender (*)
(3) Credit Report ($20.00 per file)
(4) Owner's Coverage Policy
(5) Lender's Coverage policy
(6) Appraisal fee (203k loans only)
(7) Flood Certification (FHA loans only)
(8) Home warranty policy up to $300.00
(9) Prepaid and Escrow Items for Owner-Occupant Purchasers Only:
**Home Inspection Fee:*Inspection must be preformed by a licensed Home Inspection company, approved by HUD. The bill for said inspection must be submitted to Escrow Holder no later than 15 days prior to the close of escrow.***
(10) Survey if required by lender.
(11) Recording and.or Transfer taxes or fees. (i.e., amounts charged as a Percentage of Value) If, under state or local law, the recording fees and/or transfer charges or taxes are imposed on the Seller(i.e. HUD), then HUD is immune from paying these charges and will not pay them. If however, the charges are imposed on the purchaser, HUD may pay these charges on behalf of the purchaser if funds remain in line 5. Please consult with HOC counsel for additional information.
(12) **FOR OFFICER/TEACHER HUD PROGRAM FILES ONLY:** Buyer's pre-paids. However, amount of the pre-paids shall be financed into the Buyer's loan on FHA transactions. It shall be the responsibility of the Buyer(s) to confirm with their lender that the pre-paids are included in their loan amount, prior to signing final loan documents.
*"In order to apply any portion of Line 5 to Discount Points as a buyer credit, Lender's underwriter is required to furnish escrow with completed and signed LENDER CERTIFICATION (EscrowMax form) prior to authorization to fund. Buyer, agent and/or mortgage broker is/are responsible for seeing that said form is delivered to escrow, prior to funding, in order to receive Line 5 credit for discount points charged."
**IN THE EVENT THE AMOUNT SHOWN ON LINE 5 IS -0-, OR THE AMOUNT SHOWN THEREON IS NOT SUFFICIENT TO COVER ANY PORTION OF THE BUYER'S CLOSING COSTS AS SET FORTH ABOVE, ESCROW HOLDER IS HEREBY AUTHORIZED AND INSTRUCTED TO CHARGE BUYER'S ACCOUNT WITH SAID COSTS OR THE EXCESS THEREOF, IF ANY, AT THE CLOSE OF ESCROW.**

**SELLER/HUD WILL NOT PAY AND "LINE 5 CLOSING COSTS" DOES NOT INCLUDE THE FOLLOWING ITEMS:**

Buyer Initials: ___ ___

(1) Extension fees
(2) Messenger and/or express mailing fees

**SELLER/HUD SHALL PAY THE FOLLOWING:**

(1) Recording fees-Grant Deed (Seller/HUD granting to Buyer)
(2) Repair Escrow Fee of $200 where applicable.
(3) Broker's Sale Commission of form HUD for Broad Listing Broker, Amount stated on line 6b 9548, Sales Contract.
(4) Proration of property taxes and any special assessments such as Homeowner's Association (HOA) fees and utility bills.
(5) Comdominium of HOA Transfer Fee, if applicable.

**SAID ITEMS SHALL NOT BE DEDUCTED FROM ANY AMOUNT SHOWN AS "LINE 5 CLOSING COSTS"**

**EXTENSION OF ESCROW PERIOD:**
***DISCLOSURE***: All extension policies are mandated on behalf of HUD by their duly authorized agent:
GOLDEN FEATHER REALTY SERVICES, INC., 2500 Michelson Drive, Suite 100, Irvine, California. Phone: 949 477-6300 and Fax: 949 477-2225.

All references herein to "HUD" may apply to its authorized agent: Golden Feather Realty Services, Inc.

The within escrow shall not be extended beyond the scheduled closing date set forth herein without an approved extension from HUD. In the event this escrow should fail to close by the scheduled closing date and Escrow Holder does NOT have a written approval of extension from HUD, Escrow Holder is instructed to immediately stop all processing on this transaction until such time as HUD provides Escrow Holder with written instructions to either cancel escrow or extend the time limit.

ALL EXTENSION REQUESTS MUST BE DEPOSITED INTO ESCROW BY THE 40TH DAY FROM THE DATE OF ACCEPTANCE OF THE SALES CONTRACT BY HUD (OR BY THE 55TH DAY WHEN 203K FINANCING IS USED).

***EXTENSION***: In the event an extension is required, the Broker/Buyer shall deposit herein a Request for Extension, along with required justification for said extension and proper documentation **(i.e.: a Firm Funding Date or Letter of Commitment signed by an underwriter)** Escrow Holder shall forward same to HUD for consideration. In the event extension is granted, and upon receipt of written approval of extension from HUD and the deposit of certified "good" funds from Buyer, into escrow, escrow may proceed.

NO FAXED OR MAILED EXTENSIONS TO GOLDEN FEATHER ARE ACCEPTABLE UNLESS SPECIFICALLY REQUESTED BY GOLDEN FEATHER REALTY SERVICES, INC.

Extensions are granted on a CASE BY CASE basis and the fee schedule of extensions is based on the sale price (total consideration) of the property:

$10 per them if the price is $25,000.00 or less
$15 per them if the price is over $25,000.00 but not more than $50,000.00
$25 per them if the price is more than $50,000.00

Extensions are granted in 15 day increments, i.e.:

15 days @ $10 = $150.00
15 days @ $15 = $225.00 and
15 days @ $25 = $375.00

Said extensions are NOT a portion of the purchase price. Extension fee(s) paid are NON-REFUNDABLE, regardless of the consummation of this transaction. However, if closing occurs in less than the approved extension time period, Buyers shall be credited back a portion of said fee at the per diem rate for the unused number of days, excluding date of recordation.

*****ALL 203k FHA LOANS***: Extensions must be purchased in 15 day increments at the prevailing rate per the above schedule.

**CANCELLATION:** Upon receipt of unilateral instructions from HUD to Escrow Holder to cancel this escrow and to disburse funds, Escrow Holder is authorized and instructed to comply with said instructions, cancel this escrow and disburse funds without further approval or instructions from Buyers herein. Buyers signatures on these escrow instructions shall be deemed their acknowledgement of Paragraph 12 of Sales Contract with HUD and awareness that the earnest money deposit in escrow shall not be refunded to Buyer if escrow is cancelled. Seller may, at Seller's sole option and without further instructions from Buyer, cancel this escrow. Seller may also, at Seller's sole option and without further instruction from Buyer, retain all or a portion of the deposit as "Liquidated Damages". Seller reserves the right to apply the earnest money or any portion thereof, to any sums which may be owed by the purchaser to the Seller as rent.

BUYER HEREBY RELEASES **ESCROW MAX CORPORATION** OF ANY AND ALL LIABILITY AND/OR

Buyer Initials: ___ ___

RESPONSIBILITY FOR ACTING UPON THE UNILATERAL INSTRUCTIONS FROM SELLER (HUD) FOR CANCELLATION AND DISBURSEMENT OF FUNDS.

**CLTA BINDER POLICY OF TITLE INSURANCE:** Buyer may be purchasing subject property for resale. Buyer, at Buyer's option and expense, may elect to obtain a CLTA "Binder" policy of title insurance, by notifying Escrow Holder in writing. Upon receipt of said notification Escrow Holder is authorized and instructed to request the CLTA policy of title insurance be issued as a "Binder" and to charge the account of Buyer for the cost of same at the close of escrow.

Buyer's initials here shall be deemed written authorization to obtain the "Binder policy of title insurance as set forth above: **Buyer Initials:** ___ ___

**TERMITE/SEPTIC INSPECTION WAIVED:** All parties herein acknowledge that there shall be "NO" termite report and/or completion or septic inspection report covering said property, provided through this escrow. Buyer herein waive their right to said reports. In the event the new loan as set forth in these instructions is a Federal Housing Administration Insured (FHA) loan and a termite report and/or completion is required, the Buyers herein agree and understand that Golden Feather Realty Services, Inc. has employed the services of an independent termite company to provide the inspection reports and/or work that may be required. It is the sole responsibility of Golden Feather Realty Services, Inc. to order such report, and to authorize and oversee the completion of any work required, as well as the payment for same. In the event Golden Feather Realty Services, Inc. deposits a copy of the termite report and/or completion herein, for information purposes only, you will provide Buyers and Buyer's lender, if required, with a copy at the close of escrow. Escrow Holder is relieved of any and all liability and/or responsibility in connection with said items and your only duty is to provide copies to the Buyers and Buyers' lender as set forth herein.

**BUYERS ADDITIONAL WAIVER ACKNOWLEDGEMENT:** As this is a HUD resale transaction, there will be "NO" mandatory city inspections and/or reports, property/zone disclosures and/or reports, or home warranty/protection policies provided by HUD through this escrow. Buyer(s) herein acknowledge and understand that they may obtain/order any of the above items at their own discression and at their own expense. If Escrow Holder is provided with copies of any such inspections, disclosures, warranties, and/or reports, Escrow Holder is hereby authorized and instructed to debit the Buyer(s) account as per the bill and Buyer(s) shall deposit sufficient funds to pay for said bill through escrow. The Buyer(s) and/or their representatives acknowledge that any of the above referenced bills must be submitted to escrow with the Buyer's written approval, in a timely manner, no later than 15 days prior to the close of escrow. Buyer(s) hereby relieve Escrow Holder, Agents, their Brokers, and Seller herein from any and all liability and/or responsibility in connection with said items.

**DISCLOSURE BY ESCROW HOLDER:** All parties are aware the Loan Documents "MAY BE" signed outside of escrow. Escrow Holder shall not be held liable for the sufficiency or correctness as to form, execution, or validity of any instruments deposited in this escrow (other than those documents which have been prepared by Escrow Holder), or as to the identity, authority, or rights of any person executing the same or for failure to comply with any of the provisions of any agreement or other instruments filed herein; **nor for the payments of any Notary fees and/or charges incurred in connection therewith.** Escrow Holder's duties hereunder shall be limited to the safekeeping of such money, instruments or other documents received by Escrow Holder and for the disposition or return of same in accordance with the instructions herein. The parties hereto agree, jointly and severally, to pay on demand, as well as to indemnify and hold Escrow Holder harmless from and against all costs, damages, judgments, attorney's fees, expenses, and liabilities of any kind or nature which Escrow Holder may incur or sustain in good faith in connection with or arising out of this escrow.

**CHANGE OF OWNERSHIP REPORT:** Buyer will hand you, before close of escrow, a completed "Preliminary Change of Ownership" Report which you are instructed to file accompanied by the deed with the County Recorder; or, in the absence or rejection thereof, you will pay from Buyer's funds an additional $20.00 to the County Recorder if required. It is understood that Escrow Holder does not have sufficient information to complete this form and will not be required to furnish information therefor. In the event the Preliminary Change of Ownership Statement is rejected, Buyers understand that they will be required to file a Change of Ownership Statement that should be mailed to them with the recorded grant Deed after the close of escrow. Buyers are aware that by law this requirement must be met within 45 days from recordation of their Grant Deed or they may be assessed additional penalties.

**SUPPLEMENTAL TAX BILL:** The parties hereto understand that the transfer of title may result in a reassessment of the subject property and the levy of a Supplemental Tax and that a reference to reassessment and a lien for Supplemental taxes may appear as an exception in the Policy of Title Insurance to be obtained herein. You are to have no liability or responsibility for any taxes assessed after the close of escrow. Your only responsibility is to prorate taxes as provided herein.

**GOOD FUNDS:** All parties are herewith notified that the California Legislature passed Senate Bill 1550 amending Section 12389 and adding Sections 12413 and 12413.5 to the California Insurance Code providing, among its other provisions, that: (1) NO DISBURSEMENT OF ANY FUNDS may be made from the escrow account, when such funds are received in the form of a draft (whether in-state or out-of-state bank, until the draft has cleared the bank for payment thereof). (2) NO DISBURSEMENT OF ANY FUNDS may be made from the escrow account, when such funds are received in the form of a cashier's check ( or any other item) drawn on an OUT-OF-STATE BANK, until such item(s) have cleared the account drawn against. IF THE BUYER OR BORROWER INTENDS TO CLOSE WITH FUNDS ON AN OUT-OF-STATE BANK, OR IF THEIR LOAN IS TO BE FUNDED BY A LENDER EITHER BY DRAFT OR BY OUT-OF-STATE CHECK, IT WILL NOT BE POSSIBLE TO DISBURSE THE ESCROW FUNDS UNTIL SUCH FUNDS ARE AVAILABLE IN THE ESCROW ACCOUNT. Buyer(s)/Borrower(s) or Seller(s) and Lender(s) acknowledge that no interest shall be paid to any party who

Buyer Initials: ___ ___

deposits funds to close the within escrow. Further, Seller(s) or Borrower(s) will be charged interest on loans, encumbrances and other obligations until paid by the Title Company. Borrower(s) and Lender(s) herewith agree to hold Escrow Holder harmless for any damages, interest, costs, fees or the like incurred by the Parties by reason of compliance with the provisions of Senate Bill 1550.

**NOTARY/SIGNING FEES:** All parties herein are aware of and accept that Escrow Holder will not pay any fees for notary or signing incurred by the Buyer(s) when they use notary or signing services outside of the Escrow Holder's office. The Buyer(s) herein acknowledge that they shall be responsible for paying said fees directly to the notary/signer rendering the service. If Escrow Holder is billed for such fees, Escrow Holder will forward said bill to the Buyer(s) for payment.

**CLOSING FUNDS AND RECORDINGS:** When closing funds are remitted by Cashier's Check or Official Check and total more than $2,000.00, the recording will not be scheduled until the 2nd business day following our receipt of the check(s). Lenders and Buyers are encouraged to wire closing funds to the following:

**COMERICA BANK - CALIFORNIA**
**611 ANTON BLVD., COSTA MESA, CA 92626**

**ABA # 121137522**

**FOR CREDIT TO ESCROW MAX CORPORATION, AS TRUSTEE FOR THE U.S. DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT**

**FOR ACCOUNT # 1891399733.**

**FOR PROPER CREDIT TO THIS ESCROW, THE ESCROW NUMBER MUST APPEAR ON THE WIRE.**

**FACSIMILE TRANSMITTALS:** In the event a party to this escrow utilizes "facsimile" transmitted signed documents (by Panafax, Telefax, etc.) all parties herein agree to accept, and instruct the Escrow Holder to rely upon, such documents as if they bore original signatures. All parties hereby acknowledge and agree to provide to Escrow Holder, within 72 hours of transmission, such documents bearing the original signatures. All parties further acknowledge and agree that documents necessary for recording with non-original (facsimile) signatures will not be accepted for recording by the County Recorder, thus delaying the close of escrow.

**CITY DEMANDS TO ESCROW:** Escrow Holder is hereby authorized and instructed to order from the subject City/County, a demand for current fees incurred for any Abatements and/or Notices of Substandards recorded on subject property. Escrow Holder if further authorized and instructed to debit the account of the Seller herein for any fees currently due, ie. initial inspection fees, recording fees, etc., not including any repair/renovation fees that may be listed on said demand, unless specifically listed as an Abatement condition "repair" already completed by the City/County. Buyer further understands and agrees, pursuant to "Substandard Disclosure" paragraph below, the Seller, HUD, shall not complete any additional items required.

**SUBSTANDARD DISCLOSURE:** In the event a "Notice of Substandard" exists on subject property, the parties hereto agree and understand that HUD, the seller, will be at NO expense in any rehabilitation to subject property in order to satisfy any requirements by the City/County and/or Department of Building and Safety. The Buyer herein accepts all responsibility and liability, whether monetary or otherwise, for obtaining copies of any "Notices" and agrees to comply with the demands/requirements made therein by the City/County for any repairs that are required, and holds Escrow Holder, Title Insurer, Real Estate Agent(s), Seller, and/or their representative harmless and without responsibility in connection with same. Buyer has been advised to seek independent, legal, and/or technical expert advise in assessing the risks, financial or otherwise, in acquiring the subject property and has done/will do so, to the Buyers satisfaction, prior to the close of escrow. Buyer will furnish to Escrow Holder, a list of City/County Code violations/work requirements and will sign off on same prior to recording, if deemed necessary by the title company herein. Buyer is made aware that there may be time limits for curing the defects/code violations of the substandard property, as required by the City or County department. Escrow Holder is hereby authorized and instructed to proceed with the close of escrow, reflecting said "SUBSTANDARD" item on the policy of title insurance. Buyer, after close of escrow, is responsible for any additional permit fees and for ordering the final City/County inspection once the renovations have been completed in conformance with City/County Codes, thereby enabling the City/County department to terminate the Declaration of Substandard and/or to prepare the Release of Lien.

**MEMORANDA: THE FOLLOWING ARE SHOWN AS A MATTER OF AGREEMENT BETWEEN PARTIES ONLY. ALL PARTIES ARE AWARE AND ACKNOWLEDGE THAT ESCROW HOLDER SHALL HAVE NO RESPONSIBILITY WITH REGARD TO THESE ITEMS. ESCROW HOLDER WILL TAKE NO ACTION WITH RESPECT TO THESE ITEMS EITHER BEFORE OR AFTER THE CLOSE OF ESCROW:**

**PROPERTY ADDRESS DISCLOSURE:** Parties hereto stipulate that the address of the property which is the subject of this escrow is **5936 Bartoon Avenue, Los Angeles, CA 90038**. Escrow Holder is not required to verify this and is not responsible or liable therefor.

**OCCUPANCY:** Buyer **Does** intend to occupy Property as Buyer's primary residence.

Buyer Initials: ___ ___

**Escrow Max Corporation**

Date: **May 20, 2003**
Escrow No.: **209198**

**POSSESSION:** Possession and occupancy of the property, shall be delivered to the Buyer(s), no later that -0- days after the date of recordation. It shall be the Buyer(s) responsibility to obtain any available keys and/or any remote controls, or other items that may be necessary to operate any mailboxes, security systems/alarms, and association facilities. Buyer(s) acknowledge that Escrow Holder is not responsible for the transfer of possession of the subject property, and any concerns and questions should be directed to the their agent or Realty Executives.

**CITY INSPECTION DISCLOSURE:** Subject property may be located in a City which require City Report(s) of residential property records et al. or City inspection for occupancy. It is the sole responsibility of the Buyer and/or Buyer's agent to investigate and obtain said report/inspections at Buyers' sole option and expense. HUD is to be at no expense in connection therewith and Escrow Holder is not be concerned with obtaining any such report(s) nor with ordering City property inspection for occupancy.

**WATER STOCK DISCLOSURE:** Subject property may be located in an area serviced by a private water company, which may require the issuance of or transfer of stock and/or the payment of transfer fee for the continuance of water service(s). It is the sole responsibility of the Buyer and/or Buyer's agent to investigate and obtain information concerning all utility services, prior to the close of this escrow. Buyer shall comply with any and all transfer requirements and pay any and all transfer fees that may be assessed in connection therewith. HUD is to be at no expense in connection therewith and Escrow Holder is not to be concerned with obtaining any statements and/or complying with any stock transfer requirements.

**CONDITION OF PROPERTY:** The Buyer's have made a personal inspection of the subject property and are purchasing same in its present condition, on their own responsibility and not on the representation of the Seller, Broker and/or Agents. Escrow Holder, Seller, Broker and/or Agents are hereby relieved from any liability and/or responsibility as to the present condition of said property.

***END OF MEMORANDUM ITEMS***

## ADDITIONAL ESCROW INSTRUCTIONS AND PROVISIONS

1. You are instructed to deposit all funds received by you with any State or National Bank, State or Federal Savings Bank, or State or Federal Savings and Loan Association, in a Trust Account in the name of Escrow Holder, without any liability for payment of interest. The funds may be withdrawn by you and disbursed according to the instructions of the parties. All deposits made by personal check, cashier's check, certified check or deposit other then cash or wire transfer are subject to clearance and payment by financial institution on which drawn. All disbursements are to be made by check of Escrow Holder from Trust Account. Neither you nor any of your employees will identify any payee or guarantee signatures of any person or entity at any financial institution. Funds deposited into Escrow in the form of a check, draft, or similar instrument will be identified as collected funds when the Escrow Holder's financial institution confirms that the funds are available for disbursement.

2. Your duty is to act as Escrow Holder only and does not commence and Escrow shall not be deemed opened until Mutual Escrow Instructions signed by all parties are received by you. Until Mutually Executed Escrow Instructions are received, either party may unilaterally revoke these instructions by written request delivered to you and may withdraw any funds, instruments, documents or items previously handed to you.

3. All prorations and adjustments are to be made on the basis of thirty (30) day month unless otherwise instructed in writing by all parties. For proration purposes, the Buyer will have ownership of the Real Property which is the subject of this Escrow for the entire day, regardless of the hour of recording. The "Close of Escrow" with reference to prorations, adjustments and all purpose in this Escrow shall be the day the Instruments of Conveyance are recorded or filed with the County Recorder.

4. Any funds disbursed during or on the close of Escrow will be issued jointly to the parties designated as payees unless you are instructed otherwise in writing by all designated payees. The fund representing loan and/or sale proceeds will be disbursed jointly to all persons who were the record owners of the Real Property which is the subject of the Escrow. All disbursements of fund and/or delivery of other documents or instruments concerning this Escrow will be mailed to the entitled parties by regular First-Class Mail, Postage Prepaid, at their respective addresses shown on file. However, at your discretion, you may send funds and/or other instruments or documents by Certified or Registered Mail, Federal Express, Messenger or Facsimile Machine, in which case the party for whom the delivery was made agrees to pay the costs. The provisions of this paragraph include, but are not limited to, requests for Demand Statements, requests for Beneficiary Statements, requests for Homeowners' Association Statements or any other requests as you may deem necessary for the timely closing of this Escrow. You are to instruct the County Recorder to mail recorded documents to the entitled parties at their respective addresses. You are to instruct the Title Company to mail the Title Policy(s) to the Lender(s) or Buyer(s) as deemed appropriate.

5. As soon as is practical after receipt of these mutually executed Escrow Instructions, you are to open an Order with Title Company and request a Preliminary Title Report or Commitment concerning the subject property.

6. In addition other costs and charges set forth in Escrow Instructions, Seller agrees to pay on demand, whether or not this Escrow closes, all expenses and charges incurred by you on Seller's behalf, including, but not limited to, charges for Preliminary Title Reports, Title Commitments, Policies of Title Insurance, Beneficiary Statements, Beneficiary Demands, Offset Statements, Documentary Transfer Tax Stamps, preparation of, Notarizing and Recording of documents necessary in Seller's behalf, one-half (1/2) of Sub-Escrow Fee, Seller's Escrow Fee and other costs and charges in addition to the other cost and charges set forth in these Escrow Instructions. Buyer agrees to pay on demand, whether or not this Escrow closes, all expenses and charges incurred by you on Buyer's behalf, including, but not limited to, Recording Fees, preparation of Notarizing and Recording Trust Deed(s) and other documents on Buyer's behalf, New Loan charges, existing Loan Assumption Transfer Fees, one-half(1/2) of Sub-Escrow Fees, Lender's Escrow Fee and other costs as charged.

7. Notwithstanding any provisions to the contrary contained in these Escrow Instruction or Supplement or Amendments, Escrow Holder shall <u>not</u> be responsible for the sufficiency, validity or correctness of any signature of the principal to this Escrow or any Third Party to this Escrow, nor for the sufficiency or correctness as to form, manner of execution or validity of any documents deposited in this Escrow, nor as the identity, authority, or right of any persons executing the same, either as to Documents of Record or those handled in this Escrow. Should the parties desire that you verify the signatures on instructions received by you, the party(ies) without further instructions authorize the payment of an Escrow Fee computed at two times regular Escrow Fee and will deliver separate written Escrow Instructions specifically instructing you to do so.

Buyer Initials: ___ ___

**Escrow Max Corporation**

Date: **May 20, 2003**
Escrow No.: **209198**

8. You shall not be responsible for the following: (1) the sufficiency or correctness as to form, manner of execution or validity of any documents deposited in this Escrow; (2) the identity, authority, or right of any person executing the same, either as to documents of record or those handled in the Escrow; (3) the failure of any party to comply with any of the provisions of any agreement, contract or other instrument filed or deposited in this Escrow referred to in those Escrow Instructions. Your duties shall be limited to the safekeeping of money and documents received by you as Escrow Holder and for the disposition in compliance with the written instructions accepted by you in this Escrow. You shall not be required to take any action regarding the collection, maturity, or apparent outlaw of any obligations deposited with you unless otherwise instructed in writing.

9. Where the Assignment of any insurance policy from Seller to Buyer is concerned, Seller guarantees to you any Insurance Policy handed to you in this Escrow is Policy In Force, the Policy has not been hypothecated and that all necessary premiums have been paid. You are authorized to execute on behalf of the parties Assignments of Interest in any insurance policy (other than Title Insurance Policies) called for in this Escrow. You are authorized to transmit for assignment any insurance policy to the insurance agent requesting that the insurer consent to such assignment, to request that a Loss Payee Clause or such other endorsement as may be required be issued and to forward such policy to the lenders and entitled parties. You shall not be responsible for verifying the acceptance of the request for Assignment and Policy of Insurance by the insurance company. The parties mutually agree that you will make no attempt to verify the receipt of the request for Assignment by the issuing insurance company. All parties are placed on notice that if the insurance company should fail to receive the Assignment; the issuing company may deny coverage for any loss suffered by Buyer. It is the obligation of the insured or the insured's representative to verify the issuing company's acceptance of the Assignment of the policy.

10. You are not to be held responsible in any way whatsoever for any personal property tax which may be assessed against any former or present owner of the subject property described in these Escrow Instructions, nor for the corporation or license tax of any corporation as a former or present owner.

11. If it necessary, proper or convenient for the consummation of this Escrow, you are authorized to deposit or have deposited funds or documents, or both, handed you under these Escrow Instructions with any duly authorized sub-escrow agent, including, but not limited to any Bank, Trust Company, Title Insurance Company, Savings and Loan Association, or Licensed Escrow Agent, subject to your order at or before close of Escrow in connection with closing this Escrow. Any such deposit shall be deemed a deposit under the meaning of these Escrow Instructions.

12. The parties to this Escrow have satisfied themselves outside of Escrow that the transaction covered by this Escrow is not in violation of the Subdivision Map Act or any law regulating Land Division, Zoning Ordinance or Building Restrictions which may affect the land or improvements that are the subject of this Escrow. You, as Escrow Holder, are relieved of all responsibility and liability in connection with such laws, ordinances, restrictions or regulations and are not to be concerned with any of their enforcement.

13. If any form of purchase agreement or supplement (collectively "Purchase Agreement") is deposited in this Escrow, it is understood that such document shall be effective only as between the parties signing the purchase agreement. You, as Escrow Holder, are not to be concerned with the terms of any purchase agreement and are relieved of all responsibility for the enforcement of its terms. Your only duty is to comply with the instructions set forth in the Escrow Instructions. You are not responsible for interpreting or acting on any provision of any purchase agreement on which these Escrow Instructions may be based and you shall not rely on any knowledge or understanding you may have of any such purchase agreement in ascertaining or performing your duties as Escrow Holder. In connection with any loan transactions, you are authorized to deliver a copy of any purchase agreement, supplement or amendment and a copy of all Escrow Instructions, Supplements or Amendments to the lender.

14. You are not to be concerned with the giving of any disclosures required by Federal or State Law, including, but not limited to, Real Estate Settlement Procedures Act, Regulation Z - Truth - in - Lending, condition to the subject property or other warnings, or any other warranties, express or implied.

15. Except as set forth in Paragraph 16 below, you shall not be responsible and you are released from and shall have no liability, obligation responsibility with respect to withholding of funds under 1445 of the Internal Revenue Code of 1954, as amended, commonly known as the Foreign Investment in Real Property Tax Act ("FIRPTA") or the California FIRPTA under 18805, et.seq. of the California Revenue & Taxation Code ("CAL-FIRPTA") advice about FIRPTA or CAL-FIRPTA, its requirements. A determination whether the Seller/Transferor is a foreign person, as defined, or obtaining a nonforeign affidavit or exemption from withholding or other information concerning compliance or non-compliance will not be given to the parties by the Escrow Holder. The parties are advised to seek independent legal, financial and tax counsel from their respective legal financial and tax advisors.

16. The parties are aware that California Law effective January 1, 1992, requires you to withhold a sum equal to 3 1/3% of the sales price under certain conditions where Seller does not reside in the State of California or funds are transmitted outside of California. The parties agree to prepackage and deposit such other further documents or instruments as are necessary for you to comply with this instructions and California State Law. The parties deposit such other further documents or instruments as are necessary for you to comply with this instruction and California State Law. The parties herewith acknowledge receipt of the notification of the California Franchise Tax Board embodying the California State Law commonly known as California FIRPTA as stated in California Revenue and Taxation Code 18805 and 26131.

17. You are authorized to deliver copies of all Escrow Instructions, Supplements and Amendments, Estimated Closing Statements, Preliminary Title Reports, and Notices of Cancellation, if any, to the Real Estate Sales Agent(s), Lender's Agent(s) and/or Attorney(s) for the parties, upon the parties' oral or written request. You shall not incur any liability to the parties for delivery of the copies.

18. You shall make no physical inspection of the property or personal property described in any instruments deposited in, or which is the subject of this Escrow. You have made no representations or warranties concerning any such real property or personal property and are not to be concerned with nor liable for the condition of real property or personal property.

19. The parties authorize the reformation of any instrument delivered through this Escrow if necessary or proper for the issuance of the required policy of Title Insurance or for the closing of this Escrow. Funds, Instructions or Instruments received in this Escrow may be delivered to or deposited with any Title Company to comply with the terms and conditions of this Escrow.

20. You are authorized to deduct from Seller's net proceeds or Buyers net proceeds any amount which either Seller or Buyer may owe you in any other matter or transaction. You are authorized to charge and the parties agree to pay additional Escrow fees for extraordinary services not within the range of customary Escrow processing, including, but not limited to, the verification of signatories to Escrow Instructions.

21. If structural pest control report or notice of work completed are handed to you, you shall mail a copy to Buyer as soon as is practical after your receipt.

22. You are to use your usual Document Forms or the usual Forms Title Insurance Company or Title Company and in our instructions insert dates and terms on the Instruments if incomplete when executed.

23. If the date by which Buyer's or Seller's performances are due shall be other than your regular business day, such performances shall be due on your next succeeding business day.

24. You shall conduct no Lien or Title Search of personal property regarding the sale or transfer of any personal property through this Escrow. Should the parties desire that you conduct a Lien or Title Search of personal property, the parties requesting the same shall deliver separate and specific written Escrow Instructions to you along with an agreement to pay your additional Escrow Fees.

25. You shall not be responsible in any way whatsoever nor are you to be concerned with any questions of usury in any Loan or Encumbrance, whether new or of record, which may arise during the processing of this Escrow.

26. The parties agree to deliver to you all Documents, Escrow Instructions and Funds required to process and close this Escrow in accordance with its terms.

Buyer Initials: ___ ___

**Escrow Max Corporation**

Date: **May 20, 2003**
Escrow No.: **209198**

27. You are instructed to provide Title to the Subject Real Property in the condition identified in the Escrow Instructions by the parties. You are not responsible for the contents or accuracy or any Beneficiary Demands and/or Beneficiary Statements delivered to you by existing Lienholders. You are not required to submit any such Beneficiary Statements and/or Demand to the parties for approval before the close of Escrow unless expressly instructed to do so in writing. Should the parties desire to pre-approve any such Beneficiary Statement and/or Demand, the parties requesting the same shall deliver separate and specific written Escrow Instructions to you.

28. You are not to be responsible in any way whatsoever nor be concerned with the terms of any new loan or the content of any loan documents obtained by any party in connection with this Escrow except to order such loan documents into the Escrow File, transmit the Loan Documents to Buyer for execution and transmit the executed Loan Documents to lender. The parties understand and agree that you are not involved nor concerned with the approval and/or processing of any loan or the contents and effect of Loan Documents prepared by lender.

29. The parties agree to complete and deliver to you a Statement of Information as required by the Title Insurance Company or Title Company.

30. The Federal Tax Board reform Act of 1986, as amended, and the California Revenue & Taxation, require certain transactions to be reported to the Internal Revenue Service and the California State Franchise Tax Board. In those transactions Seller will furnish a correct Tax Identification Number to you so you can report this transaction as required by Law. Seller understands that Seller may be subject to Civil or Criminal penalties for failure to do so.

31. The parties expressly indemnify and hold you harmless against third-party claims for any fees, costs or expenses where you have acted in good faith, with reasonable care and prudence and/or in compliance with these Escrow Instructions.

32. The parties agree that you have the responsibilities of an Escrow Holder only and there are no other legal relationships established in the terms and conditions of the Escrow Instructions. In connection with this Escrow: (1) You shall have no duty or responsibility of notifying any of the parties to this Escrow of any sale, resale, loan, exchange or other transaction involving any of the subject real property; (2) You shall have no responsibility or duty to disclose any benefit, including, but not limited to financial gain, realized by any person, firm or corporation involving any of the subject real property or personal property; and (3) You shall have no responsibility or duty to disclose any profit realized by any person, firm or corporation including, but not limited to any Real Estate Broker, Real Estate Sales Agent and/or a party to any other Escrow, inconnection therewith, although such other transaction may be handled by you in the Escrow Transaction. If, however, you are instructed in writing by any party, lender or other entitled person to disclose any sale, resale, loan exchange or other transaction involving any of the subject Real Property or Personal Property or any profit realized by any person, firm or corporation to any party to this Escrow, you shall do so without incurring any liability to any party. You shall not be liable for any of your acts or omissions done in good faith nor for any claims, demands, losses, or damages made or suffered by any party to this Escrow, excepting such as may arise through or be caused by your willful neglect or gross misconduct.

33. Buyer acknowledges that pursuant to the California Revenue & Taxation Code a Change of Ownership Form is required by County Recorder to be completed and affixed to any document submitted for recording which evidence a conveyance of title. The Change of Ownership Form shall be furnished to Buyer by you for Buyer's completion and execution. Buyer is aware that if Buyer does not complete the form in full, sign and return it to you before closing, a penalty will be assessed by County Recorder. If the Change of Ownership Form is not filed after the close of Escrow within the time limits set forth by County Recorder, severe additional penalties will be assessed against Buyer. For information and assistance in completing the Change of Ownership Form, Buyer may contact the County Recorder and Assessors Offices in the County in which the subject property is located.

34. Notwithstanding any other provisions in these Instructions and in addition to other fees and costs to which you may be entitled, the parties, jointly and severally, agree that if this Escrow is not consummated within ninety (90) days of the date set for closing, you are instructed to, and without further instructions, withhold your Escrow Hold Open Fee of $50.00 per month from the funds on deposit with you regardless of who deposited such funds. The parties, jointly and severally, further agree that if you are, for any reason, required to hold funds after close of Escrow, you are instructed to, and without further instructions, withhold an Escrow Fee of $50.00 per month from the funds on deposit with you regardless of who deposited such funds. The parties irrevocably instruct you to automatically cancel this file without further instructions when all funds on deposit have been disbursed.

35. Your Escrow Holder Agency shall terminate six (6) months following the date last set for close of Escrow and shall be subject to earlier termination by receipt by you of mutually executed cancellation instructions. If this Escrow was not closed or cancelled within the described six (6) month period, you shall have no further obligations as Escrow Holder except to disburse funds and documents pursuant to written Escrow Instructions and to interplead or otherwise dispose of funds and documents in accordance with a validly issued and validly served order from a Court of Competent Jurisdiction. If the conditions of this Escrow have not been complied with at the expiration date in these Escrow Instructions, you are instructed to complete the conditions at the earliest possible date, unless Buyer or Seller have made written demand upon you for the return of the funds and/or instruments deposited by Buyer or Seller and/or for cancellation of this Escrow. Should demands be made upon you, you may withhold and stop all further proceedings in the Escrow without liability for interest on funds held or for damages until Mutual Cancellation Instructions signed by all parties shall have been deposited with you. The parties, jointly and severally, agree that if this Escrow cancels or is otherwise terminated and not closed, the parties shall pay for any costs and expenses which you have incurred or have become obligated for under these Escrow Instructions, including, but not limited to, Attorney's Fees, Arbitration Fees and Costs and reasonable Escrow Fees for the services rendered by you. The parties agree that such costs and expenses shall be paid and deposited in escrow before any cancellation or other termination of this Escrow is effective. The parties agree that said charges for expenses, costs and fees may be apportioned between Buyer and Seller in a manner which, in you sole discretion, you consider equitable, and that your decision will be binding and conclusive upon the parties upon receipt of Mutual Cancellation Instructions or Final Order or Judgement of a court of Competent Jurisdiction with accompanying Writs of Execution, Levies or Garnishments. You are instructed to disburse the Escrow funds and instruments in accordance with such Cancellation Instruction, Order or Judgement and accompanying Writ and this Escrow shall, without further notice be considered terminated and cancelled.

36. The parties shall cooperate with you in carrying out the Escrow Instructions they deposit with you completing this Escrow. The parties shall deposit into Escrow, upon request, any additional funds, instruments, documents, instructions, authorization, or other items that are reasonably necessary to enable you to comply with demands made on you by third parties, to secure policies of Title Insurance, or to otherwise carry out the terms of their instructions and close this Escrow. If conflicting demands or notices are made or served upon you or any controversy arises between the parties or with any third person and arising out of or relating to this Escrow, you shall have the absolute right to withhold and stop all further proceedings in, and in performance of, this Escrow until, you receive written notification satisfactory to you of the settlement of the controversy by written agreement of the parties, or by the Final Order or Judgement or a Court of Competent Jurisdiction. All of the parties to this Escrow, jointly and severally, promise to pay promptly on demand, as well as to indemnify you to hold you harmless from and against all Administrative Governmental Investigation, Audit and Legal Fees, Litigation and Interpleader costs, damages, judgements, Attorneys' fees, expenses, obligations and liabilities of every kind (collectively "costs" which in good faith you may incur or suffer in connection with or arising out of this Escrow, whether said costs arise during the performance of or subsequent to this Escrow, directly or indirectly, and whether at trial or on appeal. You are given a Lien upon all the Rights, Title and Interest of the parties and all Escrow papers and other property and moneys deposited into this Escrow to protect your rights and to indemnify and reimburse you. If the parties do not pay any fees, costs or expenses due you under the Escrow Instructions or do not pay for costs and Attorneys' fees incurred in any litigation or interpleader, on demand, they each agree to pay a reasonable fee for any Attorney services which may be required to collect such fees or expenses, whether Attorneys' fees are incurred before trial, on appeal or in arbitration.

37. All Notices, Demands and Instructions must be in writing. No notice, demand, instruction, amendment, supplement or modification of these Escrow instructions shall be of any effect in this Escrow until delivered in writing to you and mutually executed by all parties. As set forth above, you have no duty to and shall not verify the signatures of any parties or non-parties unless further written Escrow Instruction to do so are received and the additional Escrow fees are deposited. Any purported oral instructions, amendment, supplement, modification, notice or demand deposited with you by the parties or either of them shall be ineffective and invalid. You are to be concerned only with the directives expressly set forth in the Escrow Instructions, Supplements and Amendments thereto, and are not to be concerned with nor liable for items designated as "Memorandum Items" in the Escrow Instructions.

Buyer Initials: ___ ___

**Escrow Max Corporation**

Date: **May 20, 2003**
Escrow No.: **209198**

38. These Escrow Instructions may be executed in counterparts, each of which shall be deemed an original regardless of the date of its execution and delivery. All such counterparts together shall constitute the same document.

39. If any check submitted to you is dishonored upon presentment for payment, you are authorized to notify all parties to the within Escrow, their respective Real Estate Brokers and Real Estate Agents and any other person or entity you deem in your sole discretion necessary to notify.

40. You are authorized to accept oral instructions from parties' Real Estate Broker(s), Real Estate Agent(s), Lender(s) or Lender(s) Agent(s) concerning the preparation of Escrow Instructions, Amendments or Supplements. However, you are not to act upon any instruction so delivered until you have received the same in writing signed by all parties to this Escrow.

41. In these Escrow Instructions, wherever the context so requires, the masculine gender includes the feminine and/or neuter and the singular number includes the plural.

42. The parties acknowledge and understand that you, as escrow Holder, are not authorized to practice the law nor do you give financial advice. The parties are advised to seek legal and financial counsel and advice concerning the effect of these Escrow Instructions. The parties acknowledge that no representations are made by you about the legal sufficiency, legal consequences, financial effects or tax consequences of the within Escrow Transaction.

43. You are authorized to destroy or dispose of any and all documents, papers, Escrow Instructions, correspondence and records or other material constituting or pertaining to this Escrow at any time after five (5) years from the date of: (1) the close of Escrow; (2) the date of cancellation; or (3) the date of the last activity without liability and without further notice to the parties.

44. The parties agree to release you from any and all liability of any kind or nature and to indemnify you from any loss, damages, claims, judgements or costs of any kind or nature resulting from or elated to the release or discharge of hazardous or toxic wastes on the subject property whether it occurred in the past or present or may occur in the future which release or discharge is in violation of law, in excess of any State or Federal standard, permit requirements and/or disclosure requirements existing at this time or which may exist at a future time. The parties represent that they made their own assessment of the condition of the subject property and have not relied on any of your representations in making the assessment. The parties are advised to seek independent legal and technical environmental expert advice in assessing the risks associated with potential hazardous or toxic wastes.

45. You are instructed to take notice of all information received by you on your company's Facsimile machine. To close this Escrow we each agree to provide you with executed original documents when in your sole discretion you request their delivery to you.

46. The parties signatures on all Escrow Instructions and Instruments pertaining to the within Escrow indicated their unconditional acceptance and approval of same and you are entitled to reply on the parties execution.

**WE, JOINTLY AND SEVERALLY, ACKNOWLEDGE RECEIPT OF A COMPLETE COPY OF THE WITHIN ESCROW INSTRUCTIONS AND BY OUR SIGNATURES SET FORTH BELOW, ACKNOWLEDGE THAT WE HAVE READ, UNDERSTAND AND AGREE TO BE BOUND BY THE TERMS AND CONDITIONS CONTAINED THEREIN, IN THEIR ENTIRETY.**

**Buyer's Signature:**

_______________________________ _______________________________

**Ohassy Cruz** **Nesslin Cruz**

Mailing Address: **23948 Jensen Street West Hills, CA 91304**

Forwarding Address: **5936 Bartoon Avenue Los Angeles, CA 90038**

The foregoing terms, provisions, conditions and instructions are hereby approved and accepted in their entirety and concurred with by me. I will hand you necessary documents called for on my part to cause title to be shown as set out herein, which you are authorized to deliver when you hold or have caused to be applied to funds set forth herein within the time as herein provided. You are authorized to pay on my behalf, my recording fees, charges for evidence of title as called for whether or not this escrow is consummated, except those the buyer agreed to pay. You are hereby authorized to pay bonds, assessments, taxes, and any liens of record, including prepayment penalties, if any, to show title as called for.

You are further authorized and instructed to pay commission as set forth on separate instructions made a part hereof.

**Seller's Signatures:**

**The Secretary of Housing & Urban
Development of Washington D.C., and/or
His/Her Successors and/or Assigns**

**By:**_______________________________
**Authorized Representative
By Power of Attorney**

Address: 197-087160, 1600 No. Broadway, Suite 100 Santa Ana, CA 92706-3927

**- - END OF INSTRUCTIONS - -**

Buyer Initials: ___ ___