IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NESSLIN CRUZ and<br>OHASSY CRUZ, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-1222C |
| v. | ) | (Judge Baskir) |
| | ) | |
| THE UNITED STATES | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF IN SUPPORT OF DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION
TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page(s)**


STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Nature Of The Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III. Statement Of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. The Applicable Standard For Summary Judgment Under RCFC 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II. Summary Judgment Is Appropriate Because HUD Never Agreed To Extend The Closing Date Beyond July 23, 2003 . . . . . . . . . . . . . 6

III. Plaintiffs Are Not Entitled To Their Claimed Damages . . . . . . . . . 14

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

# TABLE OF AUTHORITIES

## CASES

American Nat'l Bank & Trust Co. of Chicago v. United States,
23 Cl.Ct. 542 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Ben-Shalom v. Marsh,
881 F.2d 454 (7th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Boyle v. United Technologies Corp.,
487 U.S. 500 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Burnside-Ott Aviation Training Center, Inc. v. United States,
985 F.2d 1574 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

California Federal Bank v. United States,
395 F.3d 1263 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Congregation Etz Chaim v. City of Los Angeles,
371 F.3d 1122 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 12

DeMarco Durzo Development Co. v. United States,
60 Fed.Cl. 632 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Federal Crop Insurance Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,9

Fomby-Denson v. Department of Army,
247 F.3d 1366 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

General Elec. Co. v. United States,
60 Fed. Cl. 782 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Heckler v. Community Health Servs.,
467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

JANA, Inc. v. United States,
936 F.2d 1265 (Fed. Cir.1991) . . . . . . . . . . . . . . . . . . . . . . . . 11,12

Moore v. United States,
48 Fed. Cl. 394 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mukherjee v. INS,
793 F.2d 1006 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

OPM v. Richmond,
496 U.S. 414 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Peters v. United States,
28 Fed. Cl. 162 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Prudential Ins. Co. of America. v. United States,
801 F.2d 1295 (Fed. Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . 14,15

Rumsfeld v. United Technologies Corp.,
315 F.3d 1361 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

San Carlos Irrigation & Drainage Dist. v. United States,
111 F.3d 1557 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Solar Turbines, Inc. v. United States,
26 Cl. Ct. 1249 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Hemmem,
51 F.3d 883 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Watkins v. United States Army,
875 F.2d 699 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Wertz v. United States,
51 Fed. Cl. 443 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Zacharin v. United States,
213 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## STATUTES

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

California Civ. Code § 3306 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# STATEMENT OF THE CASE

## I. Nature Of The Case

Plaintiffs Nesslin and Ohassy Cruz seek relief pursuant to the Tucker Act, 28 U.S.C. § 1491, based upon an alleged breach of contract for the sale of real property. Compl. ¶ 1.

## II. Issue Presented

Whether defendant is entitled to summary judgment because the undisputed facts demonstrate that the Department of Housing and Urban Development ("HUD") did not agree to extend the closing date of plaintiffs' transaction beyond July 23, 2003.

## III. Statement Of Facts

HUD was the owner of real property located at 5936 Barton Avenue, Los Angeles, California (the "Barton Property"). Consolidated Statement of Uncontroverted Facts ("CSUF") ¶ 1. On or about May 5, 2003, plaintiffs Nesslin Cruz and Ohassy Cruz entered into a written Purchase and Sale Agreement pursuant to which HUD would sell the Barton Property to plaintiffs for $260,000 (the "Agreement"). CSUF ¶ 2. A copy of the Agreement is attached as Exhibit A to the CSUF.

Golden Feather Realty Services ("Golden Feather") was HUD's agent for the sale of the Barton Property. CSUF ¶ 3. Escrow Max was the parties' escrow agent for the sale of the Barton Property. CSUF ¶ 4.

Addendum A to the Agreement provided:

> "**Extensions.** The Golden Feather Realty office will grant extensions of time upon written request from the purchaser. Extensions of time to close the sale are entirely within the Seller's discretion. An extension, if granted, will be under the following conditions:
> (a) A written request for an extension must be received by Closing Agent no later than five days before the scheduled deadline for closing.
> (b) The documentation submitted with the request must establish the cause of delay and that mortgage approval is imminent during the extension period.
> (c) An extension will be for a period of fifteen calendar days. Fees are based on the Contract Sales Price of the property; $10 per day is charged if the sales price is $25,000 or less; $15 per day if the sales price is more than $25,000, but not more than $50,000 and $25 per day if the sales price is over $50,000. Extension request must be submitted through the Closing Agent and all fees must be accompanied by request at the time of submission.
> (d) Extension fees shall be retained by Seller if a closing does not occur.
> (e) At the time of closing, unused extension fees will be prorated to the Purchaser and refunded by escrow.
> (f) The granting of one extension shall not obligate the Seller to grant additional extensions, and the

> Seller shall declare a Default for the Purchasers' failure to close the sale upon the expiration of the original closing period or upon expiration of the extension.

CSUF ¶ 5.

Pursuant to the Agreement, the original closing date for the sale of the Barton Property was June 23, 2003. CSUF ¶ 6. Plaintiffs requested an initial extension of time from June 23, 2003 to July 8, 2003. Golden Feather approved that request. CSUF ¶ 7.

On or about July 11, 2003, plaintiffs requested another extension of time. A copy of this extension request is attached as Exhibit B to the CSUF. Plaintiffs completed the extension request form as follows:

| Extension Dates: | Extension Fees: |
|---|---|
| 1. 07-08-03 to 07-23-03 | $375 |
| 2. 07-23-03 to 08-07-03 | $375 |
| 3. 08-07-03 to 08-22-03 | $374 |
| Total Fees Paid To Date: | $1,125 |

CSUF ¶ 8. With their July 11, 2003 extension request, plaintiffs tendered three money orders in amounts of $500.00, $500.00, and $125.00, for a total of $1,125.00. CSUF ¶ 9.

Golden Feather forwarded the three money orders to Escrow Max. Escrow Max deposited the money orders into the escrow account. CSUF ¶ 10. In response to plaintiffs' July 11, 2003 extension request, Golden

Feather granted plaintiffs one fifteen-day extension request, from July 8, 2003 to July 23, 2003. CSUF ¶ 11. Golden Feather did not communicate with plaintiffs concerning the July 11, 2003 extension request. CSUF ¶ 12.

As of August 6, 2003, plaintiffs had not tendered loan documents that were required for closing to Escrow Max. CSUF ¶ 13. On August 6, 2003, Golden Feather cancelled the sale of the Barton Property to the plaintiffs and notified plaintiffs in writing. CSUF ¶ 14. HUD subsequently sold the Barton Property to a third party for $339,123. CSUF ¶ 15.

## SUMMARY OF THE ARGUMENT

According to the undisputed facts and the law of contracts, HUD did not agree to extend the closing date for plaintiffs' transaction beyond July 23, 2003. The express language of the Agreement limited extensions to 15 days. HUD and its agents never communicated to plaintiffs that a 45-day extension had been approved. There are no grounds for applying the doctrine of equitable estoppel, even if it could be applied against the United States, given that HUD and its agents never engaged in affirmative misconduct, and that plaintiffs have not proved any of the other elements of estoppel. In addition, plaintiffs are not entitled to their claimed damages.

## ARGUMENT

### I. The Standard For Summary Judgment Under RCFC 56

Summary disposition is appropriate where there are no genuine disputes as to any material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-52 (1986); RCFC 56(c). Summary judgment is "a salutary method of disposition 'designed to secure the just, speedy and inexpensive determination of every action.'" Sweats Fashions, Inc. v. Pannill Knitting Co., Inc., 833 F.2d 1560, 1562 (Fed. Cir. 1987) (quoting Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). "[T]he burden is not on the movant to produce evidence showing the absence of a genuine issue of material fact." Id. at 1563 (emphasis in original). Rather, "'the burden on the moving party may be discharged by "showing" — that is, pointing out to the [Court of Federal Claims] — that there is an absence of evidence to support the non-moving party's case.'" Id. (emphasis in original) (quoting Celotex, 477 U.S. at 325).

A "material fact" is one "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is,

if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A plaintiff may not maintain a breach of contract action unless it can demonstrate the following elements: "(1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach." San Carlos Irrigation & Drainage Dist. v. United States, 111 F.3d 1557, 1563 (Fed. Cir. 1997). For these reasons, as discussed below, disposition of this case through summary judgment is appropriate.

## II. Summary Judgment Is Appropriate Because HUD Never Agreed To Extend The Closing Date Beyond July 23, 2003

Plaintiffs' complaint is based upon a theory that HUD agreed to extend the closing date by 45 days when its agent, Golden Feather, processed plaintiffs' simultaneous request for three 15-day extensions of the closing date. Plaintiffs' theory cannot stand against these undisputed facts: (1) the parties' Agreement stated that "[a]n extension will be for a period of fifteen calendar days;" (2) the parties' Agreement stated that "[t]he granting of one extension shall not obligate the Seller to grant additional extensions;" and (3) Golden Feather never told the plaintiffs that

an extension beyond 15 days had been granted. Applying the plain language of the contract to these undisputed facts leads to one conclusion: HUD never agreed to extend the closing date beyond July 23, 2003.

In the absence of a statutory rule of interpretation, the Court will apply general principles of contract law. Fomby-Denson v. Department of Army, 247 F.3d 1366, 1373-74 (Fed. Cir. 2001). The general principles here are the familiar rules of offer and acceptance. Plaintiffs' theory appears to be that it offered to extend the closing date by 45 days when it submitted its July 11, 2003 extension request to Golden Feather. Golden Feather accepted the offer, according to plaintiffs' theory, even though it is undisputed that Golden Feather never communicated acceptance to the plaintiffs. CSUF ¶ 12.

Plaintiffs' theory must fail, as a matter of law, for two reasons. First, the parties' Agreement expressly provided that extensions would be limited to 15 days. CSUF ¶ 5. This express language of the Agreement is controlling, particularly in the absence of any contrary communications between Golden Feather and the plaintiffs. Solar Turbines, Inc. v. United States, 26 Cl. Ct. 1249, 1270 (1992) ("the ordinary rule [is] that the express terms of a contract, as bargained for by the parties, are controlling.").

Second, this is not a proper case for applying the doctrine of equitable estoppel, which is the theory presented in plaintiffs' brief in support of their motion for summary judgment. As the United States Claims Court stated in a discussion of United States Supreme Court precedents in American Nat'l Bank & Trust Co. of Chicago v. United States, 23 Cl.Ct. 542, 529 n.9 (1991), "[s]ignificant doubt exists that estoppel may ever be asserted against the Government." We contend that it may not. See Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 385-86 (1947).

We acknowledge that in OPM v. Richmond, 496 U.S. 414, 419-24 (1990), the United States Supreme Court declined to issue a blanket rule that the Government may never be held liable pursuant to a theory of equitable estoppel. However, the Court has mapped out certain areas where there is no claim for equitable estoppel. For example, there can be no equitable estoppel claim for a money payment contrary to a statutory appropriation, even if the a Government employee gave erroneous advice to a benefit claimant. Richmond, 496 U.S. at 424-434; see Burnside-Ott Aviation Training Center, Inc. v. United States, 985 F.2d 1574, 1581 (Fed. Cir. 1993) (explaining OPM v. Richmond rule). For another example, there

can be no equitable estoppel to enforce contract rights, or reliance upon the advice of a Government agent, where the contract terms or advice are contrary to regulation. Merrill, 332 U.S. 380 at 386-86.

Even if equitable estoppel could be applied, the threshold for applying equitable estoppel against the Government is "extraordinarily high." Wertz v. United States, 51 Fed. Cl. 443, 450 (2002). It is well-settled that "the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Servs., 467 U.S. 51, 60 (1984). "Beyond a mere showing of facts giving rise to estoppel, [plaintiff] must show 'affirmative misconduct [as] a prerequisite for invoking equitable estoppel against the government.'" Rumsfeld v. United Technologies Corp., 315 F.3d 1361, 1377 (Fed. Cir. 2003) (quoting Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000)) (emphasis and alteration in United Technologies).

Plaintiffs here have not shown affirmative misconduct. The only conduct by the Government and its agents that might draw scrutiny is the fact that Golden Feather processed all three of the money orders that plaintiffs submitted with their 45-day extension request, without informing plaintiffs that only one 15-day extension had been approved. However,

Golden Feather's failure to reject the excess fees does not rise to the level of affirmative misconduct. There can be no affirmative misconduct absent, at a minimum, an affirmative communication. See General Elec. Co. v. United States, 60 Fed. Cl. 782, 799 (2004) (finding no affirmative misconduct where Government did not affirmatively mislead contractor); DeMarco Durzo Development Co. v. United States,60 Fed.Cl. 632, 638 (2004) (finding no affirmative misconduct where complaint did not allege an intentional deception); Moore v. United States, 48 Fed. Cl. 394, 401 n.11 (2000) (citing Mukherjee v. INS, 793 F.2d 1006, 1009 (9th Cir.1986), for the proposition that even a false statement may not constitute affirmative misconduct, absent a deliberate lie or pattern of false promises). The deposit of the money orders was a routine clerical act that did not communicate to the plaintiffs that their request for a 45-day extension had been approved.

Even assuming for the sake of argument that plaintiffs could overcome the initial hurdle of proving affirmative misconduct, they have also failed to establish the four basic elements of estoppel: "(1) the government must know the true facts; (2) the government must intend that its conduct be acted on or must so act that the contractor asserting the

estoppel has a right to believe it so intended; (3) the contractor must be ignorant of the true facts; and (4) the contractor must rely on the government's conduct to his injury." JANA, Inc. v. United States, 936 F.2d 1265, 1270 (Fed. Cir.1991).

Plaintiffs have not satisfied at least three of the four elements. There is no any allegation or evidence that the Government intended that the plaintiffs believe that their request for a 45-day extension had been approved. Plaintiffs' bare assertion that the HUD "knew or should have known in the absence of notification from HUD to the contrary [that] Plaintiffs were relying on the extension," Pl. Br. at 7, is not supported by evidence. Plaintiffs are asking the Court to infer knowledge on the part of HUD, when in fact the more reasonable inference is that HUD expected that the 15-day limit on extensions would apply.

Nor have plaintiffs demonstrated ignorance of the true facts. They assert that they did not know their request for a 45-day extension was not granted in full, because they heard "nothing to the contrary" from HUD and its agents. Pl. Br. at 7. Plaintiffs knew, however, from the contract they signed that extensions were limited to 15 days. CSUF ¶ 5. The express language of the contract is the best evidence of what plaintiffs knew.

Finally, plaintiffs have not shown reliance upon the conduct of HUD or its agents. If plaintiffs had been told that their request for a 45-day extension had been approved, or if plaintiffs had traced the money orders to confirm that they had been deposited, then perhaps plaintiffs would have credible evidence of reliance. Instead, all plaintiffs have pointed to is silence on the part of HUD and its agents, and their own failure to close on the sale of the Barton Property. Pl. Br. at 7. There is not sufficient evidence to conclude that plaintiffs' failure to accomplish a timely closing was due to their reliance upon the silence of HUD and its officials.

Plaintiffs cite just three cases, none of which is on point. Congregation Etz Chaim v. City of Los Angeles, 371 F.3d 1122 (9th Cir. 2004), applied California law to a building permit case against a city. That case did not involve the law of estoppel as applied to the Federal Government, and therefore is not relevant to this case. United States v. Hemmem, 51 F.3d 883, 892 (9th Cir. 1995), did involve the Federal Government, and the Government prevailed. In Hemmem, the United States Court of Appeals for the Ninth Circuit held that even though plaintiff made a "strong case" for applying equitable estoppel, he still could not meet "the high threshold we have established for applying equitable

estoppel against the government." In Watkins v. United States Army, 875 F.2d 699 (9th Cir. 1989), the plaintiff successfully estopped the Government from denying his reenlistment on the ground that he was a homosexual, given that the Government had knowingly permitted him to reenlist on previous occasions despite that fact. Watkins bears no factual resemblance to this case, and the correctness of the decision in Watkins has been questioned by other courts, including this one. Peters v. United States, 28 Fed. Cl. 162, 170 (1992); see Ben-Shalom v. Marsh, 881 F.2d 454, 465 (7th Cir. 1989).

Plaintiffs cannot overcome the key undisputed facts: (1) the Agreement's express 15-day limit on extensions; (2) the lack of any communication from HUD or its agents that could have led plaintiffs to believe that their extraordinary request for a 45-day extension had been accepted; and (3) the lack of any allegation or evidence of affirmative misconduct by the Government. For these reasons, the Court should grant summary judgment to defendant and deny the plaintiffs' motion for summary judgment.

III. Plaintiffs Are Not Entitled To Their Claimed Damages

For the reasons stated above, we do not believe that plaintiffs are entitled to any damages. If, however, the Court does reach the issue of damages, we note that plaintiffs' computation is based upon significant errors of law and fact.

First, plaintiffs erroneously base their theory of damages upon California Civil Code section 3306.[1] Federal law, not state law, applies to this contract case. "[O]bligations to and rights of the United States under its contracts are governed exclusively by federal law." Boyle v. United Technologies Corp., 487 U.S. 500, 504 (1988). See also Prudential Ins. Co. of America. v. United States, 801 F.2d 1295, 1298 (Fed. Cir.1986) ("It is well settled that contracts to which the government is a party . . . are

---

[1]California Civil Code section 3306 provides: "The detriment caused by the breach of an agreement to convey an estate in real property, is deemed to be the price paid, and the expenses properly incurred in examining the title and preparing the necessary papers, the difference between the price agreed to be paid and the value of the estate agreed to be conveyed at the time of the breach, the expenses properly incurred in preparing to enter upon the land, consequential damages according to proof, and interest."

normally governed by federal law, not by the law of the state where they are made or performed.”).

Second, plaintiffs have not proved lost profits pursuant to Federal law. In order to recover expectancy damages, which include lost profits, a plaintiff must satisfy three requirements: (1) the plaintiff must show that the lost profits were within the contemplation of the parties because the loss was foreseeable or because the defaulting party had knowledge of special circumstances at the time of contracting; (2) the plaintiff must establish that there would have been a profit but for the breach; and (3) the measure of damages must be reasonably certain, although if a reasonable probability of damage can be clearly established, uncertainty as to the amount will not preclude recovery. California Federal Bank v. United States, 395 F.3d 1263, 1267 (Fed. Cir. 2005) (citations omitted). In order to prove lost profits here, plaintiffs would have to show an ability to close on their purchase of the Barton Property, plus an ability to re-sell the property to a third-party buyer for a reasonably certain profit. Plaintiffs have not made that showing.

Finally, plaintiffs’ damage calculation contains a significant factual error. Plaintiffs’ brief calculates lost profits by subtracting their contract

price of $260,000 from $410,795, which they contended is the price for which the Barton Property was sold to a third party. Pl. Br. at 9. After plaintiffs' brief was filed, the parties have agreed that HUD sold the Barton Property to a third party for $339,123, not $410,795 as stated in plaintiffs' brief. CSUF ¶ 15. Accordingly, we believe that maximum amount of lost profits that plaintiffs are seeking is $79,123, not $150,795 as stated in plaintiffs' brief.

## CONCLUSION

For these reasons, we respectfully request that our motion for summary judgment be granted, and that plaintiffs' motion for summary judgment be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Kathryn A. Bleecker
KATHRYN A. BLEECKER
Assistant Director

s/Roger A. Hipp
ROGER A. HIPP
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-0277
Fax: (202) 307-0972

June 23, 2005 Attorneys for Defendant