Case 1:04-cv-01222-LMB

Stephen M. Feldman, Esq./SBN 65773
LAW OFFICES OF STEPHEN M. FELDMAN
15915 Ventura Boulevard
Suite 201
Encino, California 91436
Tel No. (818) 907-0334
Fax No. (818)907-9056

Attorney for Plaintiffs Nesslin Cruz
and Ohassy Cruz

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| NESSLIN CRUZ, an individual, and OHASSY CRUZ, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>THE SECRETARY OF HOUSING AND URBAN DEVELOPMENT OF WASHINGTON, D.C.,<br><br>Defendant | Case No.: 04-1222C<br><br>**REPLY TO OPPOSITION OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

COME NOW Plaintiffs Nesslin Cruz and Ohassy Cruz (collectively "Plaintiffs") and submit the following combined reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment and Opposition to Defendant's Motion for Summary Judgment:



PDF created with pdfFactory trial version www.pdffactory.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 3

A. OVERVIEW ........................................................................................ 4

1. Defendant's Course of Dealing, Acceptance of Consideration, and Lack of Notification Manifests Assent to the Plaintiffs' Request for Extension............ 6

2. An Offer is Held Open Where Consideration is Tendered and Accepted….9

3. Review of Defendant's Argument ........................................................10

4. There is Ample Evidence of the Formation of a Contract to Extend ........13

B. DAMAGES…………………………………………………………………..13

C. CONCLUSION………………………...……………………………………14



PDF created with pdfFactory trial version www.pdffactory.com

# TABLE OF AUTHORITIES

**Cases**

*McPhail v. L.S. Starrett Co., 257 Fed. 2d. 388 (1958).*……………………………….10

*JANA, Inc. v. U.S., 936 Fed. 2d. 1265, 1270 (Fed. Cir. 1991).*……………………..11

*Morris v. U.S. 39 Fed. Cl., 7 Fed. Cl. 1997*………………………………………..13

*Wells Fargo Bank N.A. v. U.S., 88 Fed. 3d. 1012, 1021 (Fed. Cir. 1996).*………..13

**Treatises**

*Restatement (Second) of Contracts* § 22(2) ........................................................10

*Restatement (Second) of Contracts* § 30(2) ....................................................7, 11

*Restatement (Second) of Contracts* § 69(a) ....................................................9, 11

*Restatement (Second) of Contracts* § 69(1) (c) (1981)…………………………….8

*Williston On Contracts* § 25……………………………………………………9,.10



PDF created with pdfFactory trial version www.pdffactory.com

## *A.* OVERVIEW

Both Plaintiffs and Defendant have filed competing Motions for Summary Judgment. This document is Plaintiffs' combined Reply to Defendant's Opposition to Plaintiffs' Motion for Summary Judgment and Plaintiff's Opposition to Defendant's Motion for Summary Judgment.

Defendant received written requests for extension and negotiated the Plaintiffs' money orders without notifying the Plaintiffs of approval or disapproval. Based upon the above, Plaintiffs could reasonably assume that the requested extensions were granted. This assumption by the Plaintiffs is in accord with a previously established *course of dealing* with Defendant. This course of dealing demonstrates an acceptance of requested escrow extensions on the part of Defendant by silence. It is Defendant's silence that the Plaintiffs relied upon to their detriment.

As a result of Defendant's silence, when Defendant had a duty to speak, and Defendant's actions in accepting and negotiating Plaintiffs' proffered consideration, Plaintiffs continued with their escrow by attempting to obtain financing with an anticipated closing date of August 22, 2003. Plaintiffs were justified in such belief because Defendant's earlier approval of an escrow extension came without notice and upon acceptance and negotiation of the proffered consideration. Plaintiffs did not receive notice that their subsequent



PDF created with pdfFactory trial version www.pdffactory.com

request for extensions was granted or denied. Plaintiffs further contend that if Defendant notified Plaintiffs that some or all of the requested extensions were not approved, Plaintiffs would have obtained needed financing in accord with the duration of escrow.

In opposition to the Plaintiffs' position, and in arguing for a Summary Judgment, Defendant contends that Defendant never agreed to extend the closing date for the Plaintiffs' transaction beyond July 23, 2003. Defendant further argues that Defendant's agent's negotiating of Plaintiffs' money orders in connection with Plaintiffs' requested extensions of escrow was a clerical function having no relationship to Defendant's assent to Plaintiffs' offers to extend the escrow date and does not rise to the level of affirmative misconduct for purposes of estoppel. The Defendant argues there are no grounds for equitable estoppel due to the plaintiffs' inability to prove the elements of estoppel. Lastly, the Defendant asserts that the Plaintiffs are not entitled to their claimed damages.

The Court is left with the following primary questions regarding the viability of the Plaintiffs' claim: 1. Did Defendant extend Plaintiffs' escrow closing date beyond August 6, 2003? 2. If Defendant extended Plaintiffs' escrow closing date beyond August 6, 2003, did Defendant breach the contract with the Plaintiffs? 3. If Defendant breached the contract with Plaintiffs, what are the Plaintiffs' damages for Defendant's breach of the contract?



PDF created with pdfFactory trial version www.pdffactory.com

1. Defendant's Course of Dealing, Acceptance of Consideration and Lack of Notification Manifest Assent to Plaintiffs' Request for an Extension of Escrow.

The undisputed facts of this case demonstrate that Plaintiffs and Defendant entered into a contract for the purchase and sale of real property with a specified closing date. Plaintiffs made an initial offer to extend the specified escrow closing date by submission of a written request for an extension and tendering of fees in accordance with Defendant's specified policies. Defendant accepted this offer by negotiating the submitted fees and extending the escrow without any other communication with the Plaintiffs. The Plaintiffs then made an additional offer to extend the closing date by again submitting a written request for another extension and tending the required fees, but this time the request for extension was for multiple extension periods.

In connection with Plaintiffs' second request for extension of escrow, Defendant accepted Plaintiffs' proffered fees by negotiating and depositing same without any communication with the Plaintiffs as to whether Defendant accepted or rejected the offer to extend escrow for the additional requested periods. On August 6, 2003, one day prior to the expiration of the second requested extension period in Plaintiffs' new offer to extend, Defendant without any previous notification to Plaintiffs' canceled escrow.



PDF created with pdfFactory trial version www.pdffactory.com

Defendant now contends that Defendant had no obligation to extend escrow beyond one 15 day period notwithstanding the receipt of Plaintiffs' written request to extend, the negotiation of Plaintiffs' proffered extension fees and Defendant's failure at any time to notify Plaintiffs of Defendant's intention to extend for only one period rather than three. It was only after the cancellation of escrow and Plaintiffs filing of this litigation that Defendant opined that Defendant only extended escrow for one 15 day period and had no obligation to grant any further escrow extensions.

Obviously, Defendant hid its secret intention not to extend escrow for more than one 15 day period from Plaintiffs. It is also obvious that Defendant believes that instead of being required to accept Plaintiffs' offer to extend escrow by acceptance and silence, Defendant believes that it had an option to either go forward with Plaintiffs' purchase transaction or wait until a better opportunity arose at which time Defendant could always terminate Plaintiffs' purchase agreement by claiming it never intended to extend escrow for three periods.

The basic formation of a contract which is supported by the Restatement (Second) of Contracts and large body of common law requires an offer, assent to the offer and consideration of the bargain. Assent to an offer manifests in several acceptable forms. An offer invites acceptance in any manner and by any medium reasonable under the circumstances. *Restatement (Second) of Contracts* § 30(2).



PDF created with pdfFactory trial version www.pdffactory.com

In addition, acceptance can manifest by a party or by parties continuing previous course of dealings. *Restatement (Second) of Contracts* § 69 (1) (c) (1981).

In this case, Plaintiffs modified the original contract, in accordance with Addendum A to the Agreement by offering money in exchange for extensions of escrow. Defendant granted the first extension and did not notify the Defendant of the acceptance. CSUF ¶ 5. In accepting the Plaintiffs' initial offer to extend escrow, Defendant created a course of dealing between itself and the Plaintiffs. This course of dealing involved Defendant's acceptance and negotiation of Plaintiffs' tendered consideration and the granting of Plaintiffs' request for extension of escrow without notification of acceptance or rejection of the requested escrow extension.

Defendant's established course of dealing with Plaintiffs allowed the Plaintiffs to reasonably assume that no manifestation of rejection of the requested extension by Defendant meant that Plaintiffs' subsequent request for extensions was approved.

Thus, where an offeree fails to reply to an offer, his silence and inaction operates as an acceptance where the offeree takes the benefit of offered services or consideration with reasonable opportunity to reject them and reason to know that they were offered with the expectation of compensation. *Restatement (Second) of Contracts* § 69(a).



PDF created with pdfFactory trial version www.pdffactory.com

In the present case, Defendant's course of dealing with the Plaintiffs established that Defendant would not communicate with Plaintiffs if the offer to extend had been accepted by Defendant. Defendant's acceptance of Plaintiffs' second request for extension, by acceptance, negotiation of consideration, and silence, allowed for two things: one, the extension provided the Plaintiffs with what Plaintiffs believed was more time to secure a financing; two, the extension allowed Defendant more than enough time to notify the Plaintiffs that some or all of Plaintiffs' requested extensions were not granted and to give Plaintiffs sufficient time to perform.

In the pending matter, Defendant accepted and negotiated Plaintiffs' money orders knowing that the Plaintiffs tendered the money orders as consideration for the requested extensions while Defendant hid its secret intention not to grant all of the extensions. This conduct by Defendant allowed Plaintiffs to believe that the extensions were granted and did not provide Plaintiffs with sufficient advance notification to complete its financing and purchase the subject property.

2. <u>An Offer is Held Open Where Consideration is Tendered and Accepted.</u>

Holding open an offer for the sale of real property is legally binding when there is consideration. Once consideration is provided and accepted, the offer becomes a contract "locked within the sheath of consideration." *Williston On*



PDF created with pdfFactory trial version www.pdffactory.com

*Contracts (Rev. Ed. 1936)* § 25; *McPhail v. L.S. Starrett Co. 257 Fed. 2d 388 (1958).*

In the present case, it is an undisputed fact that the Plaintiffs provided consideration, in the form of money orders, which accompanied their requests for extensions. It is also an undisputed fact that Defendant accepted the money orders for the purpose of granting extensions by negotiating them. In applying the well established contract law of consideration, the offer for extension by the Plaintiffs, was supported by consideration and accepted by Defendant creating a legally binding contract through August 22, 2003 not August 6, 2003.

3. Review of Defendant's Argument.

While Defendant's assent to the requested escrow extensions is clear, Defendant argues that negotiation of the money orders was a routine clerical act that was not meant to communicate approval of the requested forty-five day extension. (Def's Cross Mot. For Sum. Jud. And Op. to Pl. Mo. For Sum. Jud. Page 10 (June 23, 2005)). Plaintiffs contend that it is Defendant's established custom and practice not to provide notification of assent. According to the *Restatement (Second) of Contracts § 22(2)* a manifestation of mutual assent may be made even though the moment of acceptance can not be identified.

Considering the lack of notice provided by Defendant in Plaintiffs' first and second request for extension of escrow, the fact that the money orders were



PDF created with pdfFactory trial version www.pdffactory.com

offered as consideration for extensions and accepted and the fact that contracts are formed by acceptance of money, one is left to an objective standard to conclude that the Purchase Contract between Plaintiffs and Defendant was effective through August 22, 2003. *Restatement (Second) of Contracts* § § 30(2), 69(a).

Defendant further argues that Plaintiffs have failed to establish three of the four elements of estoppel as set forth in *JANA, Inc. v. U.S.*, 936 F.2d 1265 1270 (Fed. Cir. 1991). The four elements of estoppel are:

1. The government must know the true facts;

2. The government must intend that its conduct be acted on or must act so that the one asserting the estoppel has a right to believe it so intended;

3. The one raising the estoppel must be ignorant of the true facts; and

4. The one raising the estoppel must rely on the government's conduct to his injury.

Taking the elements in turn in the pending matter, the Court can conclude that the Defendant is estopped from asserting that it only granted one 15 day extension to Plaintiffs as follows:

1. Defendant knew that the Plaintiffs had not provided the total



PDF created with pdfFactory trial version www.pdffactory.com

consideration for the purchase and were requesting extensions of escrow to obtain the necessary financing. This is clear from the fact that Defendant granted Plaintiffs one previous extension and escrow had not closed;

2. As described above, Defendant apparently as a regular course of dealing provided extensions without notification that extensions were granted or rejected and did not so notify Plaintiffs upon either of Plaintiffs' requests for extensions. Moreover, Defendant knew that escrow was still pending without Plaintiffs providing necessary funds to close. Thus, Defendant knew or should have known that Plaintiffs were relying upon the granting of the requested escrow extensions;

3. The fact that the Plaintiffs did not close escrow but continued to seek funds to purchase the property demonstrates that Plaintiffs had no knowledge that the requested extensions were not granted;

4. Plaintiffs did not close escrow prior to August 6, 2003 reasonably believing that Plaintiffs had an extension to close escrow through August 22, 2003. If Plaintiffs had known that the requested extensions of escrow had not been granted, Plaintiffs would have known the actual date of the close of escrow and could have performed. Instead Plaintiffs lost the opportunity to purchase the subject property by not performing in a timely manner to Plaintiffs' detriment and damage.



PDF created with pdfFactory trial version www.pdffactory.com

4. There is Ample Evidence of the Formation of a Contract to Extend Escrow

Defendant's course of dealings and negotiation of the money orders demonstrate Defendant's assent to Plaintiffs' offer to modify their contract by extending escrow through August 22, 2003. The Defendant's assent to the offer to extend escrow created a legally binding contract. The contract obligated the Defendant to allow escrow to remain open until August 22, 2003. The Defendant materially breached this contract by canceling the escrow prior to August 22, 2003.

**B. DAMAGES**

In breach of contract cases, the general rule at common law is to award damages that will place the injured party in as good as a position as he or she bargain). *Morris v. U.S. 39 Fed. Cl., 7 Fed. Cl. 1997; Wells Fargo Bank N.A. v.* would have been in had the breaching party performed (i.e. Benefit of the *U.S., 88 F. 3d 1012, 1021 (Fed. Cir. 1996).*

In this matter the damages corresponding with the benefit of Plaintiffs' bargain would be the measurement of the difference between the agreed price and the fair market value of the real property at the time of breach plus any consequential damages. Thus, the Plaintiffs are seeking the difference between $260,000 and the market value of the real property at the date of the breach.



PDF created with pdfFactory trial version www.pdffactory.com

Aside from the stipulated facts which provide that the subsequent sales price of the property was $339,173.00, the only evidence before the Court as to the value of the property at the time of the breach is the unrefuted declaration of Nesslin Cruz which states that the fair market value of the property at the time of breach was at least the amount of the subsequent sale . Defendant correctly points out that Defendant, Nesslin Cruz misspoke regarding the subsequent purchase price which was $339,173.00 and not $410,795.00. Therefore, Plaintiffs are seeking damages in the sum of $79,173.00.

**C. Conclusion**

Defendant's previously established course of dealings with Plaintiffs established the Defendant's manifestation of assent to requested escrow extensions by the receipt of written requests for extension of escrow, by the tender and negotiation of money orders, and by Defendant's silence as to acceptance or rejection.

Here, the Plaintiffs provided Defendant with written requests for escrow extensions and the requisite consideration for such escrow extensions. Plaintiffs' request for escrow extensions requested three consecutive extensions of 15 days each which would provide for an escrow closing date of August 22, 2003. Defendant caused Plaintiffs' tendered consideration to be accepted and negotiated. At no time before the cancellation of escrow by Defendant on



PDF created with pdfFactory trial version www.pdffactory.com

August 6, 2003, did Defendant communicate to Plaintiffs that Plaintiffs' request for extension of escrow through August 22, 2003 would not be granted.

Plaintiffs, on the strength of the previous escrow extension, on Defendant's acceptance of Plaintiffs tendered consideration and on Defendant's silence, reasonably assumed that escrow closing had been extended to August 22, 2003.Yet, on August 6, 2003, Defendant canceled escrow. Defendant now takes the position that it was not obligated to extend escrow beyond one 15 day extension. While, that may have been true before Defendant accepted and negotiated Plaintiffs proffered consideration in silence, it is certainly not true after the fact and after Plaintiffs' relied upon Defendant's granting of the requested escrow extensions through August 22, 2003.

In that regard, the Court should note that Defendant has not to this date returned Plaintiffs' proffered consideration for the escrow extensions through August 22, 2003. If Defendant did not intend to grant the escrow extension to Plaintiffs through August 22, 2003, didn't Defendant have an obligation to Plaintiffs to return Plaintiffs' unused consideration and to give Plaintiffs sufficient notice of Defendant's intention to allow Plaintiffs a reasonable opportunity to perform? Doesn't Defendant have at the very least an implied covenant of good faith and fair dealing in its purchase agreement with Plaintiffs?



PDF created with pdfFactory trial version www.pdffactory.com

In any event, it is the contention of Plaintiffs that Plaintiffs made an offer to Defendant to extend the close of escrow through August 22, 2003 and that the offer to extend escrow was supported by consideration. It is the position of Plaintiffs that Defendant accepted Plaintiffs' offer to extend escrow by negotiation of the consideration, silence, the parties' previous course of dealings and Plaintiffs' reliance. Since the close of escrow was extended to August 22, 2003, Defendant breached the Purchase Agreement with Plaintiffs by canceling on August 6, 2003.

Plaintiffs' damages as a result of Defendant's breach of the Purchase Agreement is $79,173.00 which is the sales price of the subsequent sale of the property by Defendant. These damages are corroborated by the stipulated facts and the unrefuted testimony of Nesslin Cruz in his declaration accompanying Plaintiffs' Motion for Summary Judgment.

Therefore, it is respectfully requested that this Honorable Court grant Plaintiffs' Motion for Summary Judgment and deny Defendant's Motion for Summary Judgment.

Dated: July 3, 2005

Law Offices of Stephen M. Feldman, Inc.

By:*:/Stephen M. Feldman*

Attorney for Plaintiffs
Nesslin and Ohassy Cruz
15915 Ventura Blvd., Suite 201
Encino, California 91436
Phone (818) 907-0334
Facsimile (818) 907-9056



PDF created with pdfFactory trial version www.pdffactory.com

CERTIFICATE OF FILING

I hereby certify that on July 4, 2005, a copy of the foregoing "PLAINTIFFS REPLY TO OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/STEPHEN M. FELDMAN



PDF created with pdfFactory trial version www.pdffactory.com